UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DENICHLOS PORTER,

               Petitioner,

v.                                                              CASE NO. 06-10429
                                                                HONORABLE GERALD E. ROSEN

J. TROMBLEY,

               Respondent.

_____/

### OPINION AND ORDER
### DENYING PETITION FOR WRIT OF HABEAS CORPUS,
### DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
### BUT GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Denichlos Porter has filed a *pro se* application for the writ of habeas corpus

under 28 U.S.C. § 2254.  The habeas petition challenges Petitioner's state convictions on two

grounds:  denial of the right to confront witnesses and ineffective assistance of counsel.  In an

answer to the habeas petition, Respondent urges the Court to deny the habeas petition on the

grounds that Petitioner's first claim is procedurally defaulted and that both claims lack merit.

The Court agrees that the claims lack merit.  Therefore, the habeas petition will be denied.

## I.  Background

Petitioner was charged in Wayne County, Michigan with carjacking, assault with intent

to murder, assault with intent to do great bodily harm less than murder, felon in possession of a

firearm, felonious assault, felony firearm, and two counts of armed robbery.  The charges arose

from an incident on May 4, 2003.  As explained by the trial court,

While parked on Maple Ridge in Detroit, Wayne County, Jason [Smith's] car door opened. The defendant pointed a gun at Jason. There were four black males present. The defendant grabbed Jason and put him on the ground. The defendant got into the car while another man was pointing a gun at Jason.

Dimitrious Porter, also known as Black or Black Money, the defendant's brother, took Jason's bracelet. Dimitrious shot at Jason.

The fourth man took Jason's watch and money. The defendant drove off in Jason's car without Jason's permission. The other three men left in the car that they came in. Jason identified the defendant in a live lineup and knew him since middle school.

(Tr. July 16, 2003, at 81-82.)[1] As further explained by the Michigan Court of Appeals,

[t]he principal issue at trial was defendant's identity as one of the perpetrators. The evidence established that [Jason] Smith had known defendant for many years and had ample opportunity to observe him, [Mario] Jackson, and the other perpetrators during the crime. Although the defense presented alibi witnesses ([defendant's] girlfriend and her sister, who were also Jackson's cousins) who claimed that both men were with them the entire evening, Smith's girlfriend identified Jackson as one of the men involved in the incident.

*People v. Porter*, No. 250229, at 2 (Mich. Ct. App. Jan. 20, 2005).

During trial, the court granted a directed verdict of acquittal on the charges of assault with intent to murder, assault with intent to commit great bodily harm less than murder, and one count of armed robbery. At the close of the bench trial, the trial court found Petitioner not guilty of the remaining count of armed robbery, but guilty of carjacking, MICH. COMP. LAWS § 750.529a, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, felonious assault, MICH. COMP. LAWS § 750.82, and felony firearm, MICH. COMP. LAWS § 750.227b.

The trial court sentenced Petitioner as a habitual offender to two years in prison for the felony firearm conviction, followed by concurrent terms of eleven to twenty years for the

---

[1] Jason testified that Mario Jackson was the third man in the group, but that he did not know the fourth man.

carjacking, three to seven and one-half years for being a felon in possession of a firearm, and three to six years for the felonious assault. The Michigan Court of Appeals affirmed Petitioner's convictions, and the Michigan Supreme Court denied leave to appeal. *See People v. Porter*, 473 Mich. 885; 699 N.W.2d 703 (2005) (table).

Petitioner filed his habeas corpus petition on January 31, 2006. The grounds for relief read:

> I.      Petitioner Porter was denied a fair trial and his right to confrontation when his non-testifying codefendant's unreliable hearsay statements were admitted and used against him as substantive evidence. US Const Am IV, XIV; Mich Const 1963, Art 1, § 17.
>
> II.     Petitioner was denied a fair trial and his right to the effective assistance of counsel when the complainant testified that Petitioner was involved in a gang that dealt drugs and his attorney did not object or move for a mistrial. US Const. Am VI, XIV; Mich Const 1963, Art 1, § 17.

Although Respondent asserts that Petitioner's first claim is procedurally defaulted, the Court believes the claim lacks merit. Procedural default is not a jurisdictional bar to substantive review of a meritless claim. *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), *cert. denied*, 546 U.S. 1100 (2006); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). Accordingly, the Court will proceed to adjudicate the substantive merit of Petitioner's claims, using the following standard of review.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (*per curiam* opinion) (emphasis in original). Furthermore, section "2254(d) dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (quotation marks and citations omitted). In addition, "state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1)." *Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004).

### III. Discussion

#### A. Petitioner's Right to Confront Witnesses

Petitioner alleges that he was denied a fair trial and his right to confront witnesses when Mario Jackson's hearsay statements were admitted as substantive evidence against him at trial. Jason Smith was permitted to testify that, some time after the carjacking, he discussed the incident with Mario Jackson, who was Petitioner's co-defendant at the time.[2] During their conversation, Jackson informed Smith that Petitioner and the other men involved in the carjacking had waited for Jackson to arrive on the night in question. As soon as Jackson joined the other men, the group pulled up behind Smith's car and jumped out of their vehicle. (Tr. July 16, 2003, at 29-30.)

Petitioner claims that Mario Jackson's comments to Jason Smith were prejudicial because they corroborated Smith's testimony and cast him (Petitioner) as the instigator and leader of the offense. And because Mario Jackson did not testify at trial, Petitioner asserts that he was denied his right to confront Jackson. The Michigan Court of Appeals determined on review of this claim that Petitioner's hearsay and constitutional claims were harmless error.

Under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), a constitutional error is harmless unless it had a "substantial and injurious effect or influence" on the verdict. "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18

---

[2] The case against Jackson was dismissed at the preliminary examination.

(1966)]." *Fry v. Pliler*, __ U. S. __, __, 127 S. Ct. 2321, 2328 (2007).

Jason Smith was able to identify Petitioner because he had known him for years. In fact, Smith explained at trial that, several months before the carjacking, he sold a car to Petitioner. When Petitioner failed to make all his payments, Smith kept the car, as well as, the payments that Petitioner had made toward the purchase of the car. Smith then went out of town for a few months. He returned home a day or so before the carjacking. (Tr. July 16, 2003, at 32-35.)

Although Smith's account of what Mario Jackson said to him about the subsequent carjacking supported Smith's identification of Petitioner,

> Smith's . . . account of [the] discussion with [Mario] Jackson was no more compelling than his account of the incident itself. Had the [trial] court disbelieved Smith's primary account, it would have also disregarded the secondary account as a further embellishment of Smith's story. Nothing in the court's findings of fact suggest that the court was influenced by the secondary account.

*Porter*, Mich Ct. App. No. 250229, at 2. This Court therefore concludes that the alleged hearsay and Confrontation Clause errors could not have had a substantial and injurious effect or influence on the trial court's decision and were harmless. Petitioner has no right to relief on the basis of his first claim.

### B. Failure to Object to Evidence of Petitioner's Involvement with Drugs and Gangs

Petitioner's second and final claim is that he was denied a fair trial when Jason Smith testified that Petitioner was involved in a gang that dealt in drugs. Petitioner contends that this testimony was irrelevant and prejudicial. Petitioner also alleges that his attorney was ineffective for not objecting to the testimony or moving for a mistrial on the ground that there was no meaningful connection between the gang-related evidence and the charged offenses.

The Michigan Court of Appeals stated on review of this claim that Petitioner had failed

6

to overcome the strong presumption that his attorney's failure to object was sound trial strategy. The court of appeals also stated that Petitioner had failed to establish that his attorney's performance was prejudicial, because the trial court was less likely to be affected by evidence of drug-dealing and gang-involvement than a jury.

To establish ineffective assistance of counsel, Petitioner must demonstrate that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). The "deficient performance" prong of this test requires showing "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The "prejudice" prong requires showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The evidentiary issue in question occurred during defense counsel's cross-examination of Jason Smith. Defense counsel asked Smith whether he and Petitioner were friends. Smith answered, "We dealt in drugs together." Smith subsequently made other comments about Petitioner's involvement in selling drugs. (Tr. Apr. 16, 2000, at 33, 44-45.)

> Gangs generally arouse negative connotations and often invoke images of criminal activity and deviant behavior. There is therefore always the possibility that a jury will attach a propensity for committing crimes to defendants who are affiliated with gangs or that a jury's negative feelings toward gangs will influence its verdict. Guilt by association is a concern whenever gang evidence is admitted.

*United States v. Irvin*, 87 F.3d 860, 865 (7th Cir. 1996) (quoted in *United States v. Peyton*, 183 Fed. Appx. 539, 545 (6th Cir. 2006) (unpublished), *cert. denied*, __ U.S. __, 127 S. Ct. 2095 (2007)).

Petitioner had a bench trial, however, and "judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions." *Harris v. Rivera*, 454 U.S. 339, 346 (1981) (*per curiam*). "The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the Court considered only properly admitted and relevant evidence in rendering its decision." *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972). Furthermore, Jason Smith implicated himself in drug dealing and thereby tarnished his own credibility when he made the comment that he and Petitioner had dealt in drugs. The Court therefore concludes that defense counsel was not ineffective for failing to object to Smith's testimony about Petitioner's involvement in gangs and drugs.

As for the evidence itself,

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence. . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003). Because there is no Supreme Court decision holding that the admission of "other bad acts evidence" violates the Constitution, the state appellate court's conclusion -- that the trial court's decision was not influenced by evidence of drug-dealing and gang involvement -- cannot be deemed "contrary to" Supreme Court precedent under 28 U.S.C. § 2254(d). *Id*.

## IV. Conclusion

The state appellate court's decision did not amount to an unreasonable determination of the facts, and the state court's rejection of Petitioner's claims did not result in a decision that was contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the

Petition for a Writ of Habeas Corpus [Doc. 1, Jan. 31, 2006] is DENIED.  The Court DECLINES to issue a certificate of appealability because reasonable jurists would not find the Court's assessment of Petitioner's constitutional claims debatable or wrong.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The standard for issuing a certificate of appealability "has a higher threshold than the [*in forma pauperis*] standard . . . ."  *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997).  An appeal may be taken *in forma pauperis* if it is taken in good faith and is not frivolous.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(4)(B); *Youngblood*, 116 F.3d at 1115; *Sweeney v. Smith*, 9 F. Supp.2d 1026, 1027 (E.D. Wis. 1998).  The issues in this case are not frivolous even though they do not warrant habeas relief.  Therefore, if Petitioner decides to appeal this Court's decision, he may proceed *in forma pauperis* on appeal.

s/Gerald E. Rosen_____
Gerald E. Rosen
United States District Judge

Dated:  January 31, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 31, 2008, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry_____
Case Manager